UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

|  | Chapter 13 Case |
|---|---|
| John Andrew Kurimay and Annette Marie Kurimay, | Case No. 19-30669-KAC |
| Debtors. |  |

### NOTICE OF HEARING AND MOTION
### FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)

TO:      The Debtors and the other entities specified in Local Rule 9013-3(a):

1.      Spire Credit Union ("Movant") hereby moves this Court for the relief requested below and gives notice of hearing.

2.      The Court will hold a hearing on this motion on Wednesday, June 9, 2021 at 1:30 p.m., or as soon thereafter as counsel can be heard, before the Honorable Kathleen A. Constantine, Courtroom 2C, United States Courthouse, 316 North Robert Street, St. Paul Minnesota, or as soon thereafter as counsel can be heard.

3.      Any response to this motion must be filed and delivered no later than Friday, June 5, 2021 which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays).   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT A HEARING.

4.      This court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition commencing this chapter 13 case was filed on March 7, 2019.  The case is now pending in this court.

5.      Movant hereby moves this Court, pursuant to 11 U.S.C. §362(d) and Federal Rules of Bankruptcy Procedure 4001. This motion is filed pursuant to Federal Rules of Bankruptcy Procedure 9014 and Local Rules 4001-1 and 9013.  Movant requests relief from the automatic stay with respect to a mortgage lien encumbering real property of Debtors.

6.      A Chapter 13 Plan was confirmed on May 9, 2019.

7.      The facts and circumstances supporting this Motion are set forth in the Affidavit in Support of Motion for Relief from Automatic Stay filed contemporaneously herewith (the "Affidavit").

8.      The Debtors are the owners of real property having an address of 13939 Falcon Avenue, Apple Valley, MN 55124 (the "Property").

9.      The legal description of the Property is:  Lot 37, Block 1, Waterford Village Townhomes Second, Dakota County, Common Interest Community Number 152.

10.      The Debtors have executed and delivered or are otherwise obligated with respect to that certain Closed-End Credit Agreement in the original principal amount of $160,000.00 (the "Note").  A copy of the Closed-End Disclosure Statement and Credit Agreement is attached to the Affidavit as Exhibit B.  Movant is an entity entitled to enforce the Note.

11.      Pursuant to that certain Mortgage dated May 13, 2011, filed for record in the office of the Dakota County Recorder on June 2, 2011 as Document No. 2803419 (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtors under and with respect to the Note and the Mortgage are secured by the Property.  A copy of the Mortgage is attached to the Affidavit as Exhibit C.

12.      As of May 20, 2021, the payoff balance on the Note and Mortgage is $121,180.36 consisting of: principal balance of $91,278.09; unpaid accrued interest of $7,013.16, unpaid real estate taxes advanced of $20,435.76, and pre-petition costs and fees of $2,453.35.

13.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $750.00 in legal fees and $188.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

14.      The "Current Default Amount" as defined in Local Form 4001-1 is $23,066.60.

15.      The value of the Property as scheduled by the Debtors is $330,000.00.  The current tax-assessed value of the Property is $342,300.00.

16.      Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed are:

   i.   Movant:  $121,180.36

17.      Cause exists for relief from the automatic stay for the following reasons:

a)      Movant's interest in the property is not adequately protected; and

b)      Post-confirmation payments required by the confirmed Plan have not been made to Movant

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Terminating the automatic stay of 11 U.S.C. § 362(a) to allow Movant (and any successors and assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      For such other relief as the Court deems proper.

Dated: May 21, 2021.                          **SCHINDELSEGAL, PLLC**

                                              By: ___/s/ Daniel M. Duffek_____
                                              Daniel M. Duffek, #388297
                                              5901 Cedar Lake Road
                                              Minneapolis, MN  55416
                                              Telephone: (612) 253-6970
                                              dduffek@schindelsegal.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

                                         Chapter 13 Case

John Andrew Kurimay and Annette Marie Kurimay,     Case No. 19-30669-KAC

           Debtors.

**AFFIDAVIT IN SUPPORT OF MOTION
FOR RELIEF FROM AUTOMATIC STAY**

I, Julius Lee, declare under penalty of perjury as follows:

1.      I am a Sr. Bankruptcy/Legal Specialist of Spire Credit Union and have personal knowledge of the facts stated herein.   Spire Credit Union was formerly known as Spire Federal Credit Union.   Attached hereto as Exhibit A is a true and correct copy of the Minnesota Department of Commerce Credit Union Charter Conversion.

2.      This affidavit is provided in support of the Motion for Relief from Stay filed by Movant in this proceeding (the "Motion").

3.      The Debtors have executed and delivered or are otherwise obligated with respect to that certain Closed End Credit Agreement in the original principal amount of $160,000.00 (the "Note") payable together with interest thereon.  An accurate copy of the Note is attached hereto as Exhibit B.

4.      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtors under and with respect to the Note and the Mortgage are secured by the Property (as defined in the Motion).  An accurate copy of the Mortgage is attached hereto as Exhibit C.  Annette M. Kurimay and John A. Kurimay are the mortgagors on the Mortgage.

5.      The address of the Property is:  13939 Falcon Ave., Apple Valley, MN 55124. The legal description of the Property is:   Lot 37, Block 1, Waterford Village Townhomes Second, Dakota County, Common Interest Community Number 152.

6.      As of May 20, 2021, the payoff balance on the Note and Mortgage is $121,180.36 consisting of: principal balance of $91,278.09; unpaid accrued interest of $7,013.16, unpaid real estate taxes advanced of $20,435.76, and pre-petition costs and fees of $2,453.35.

7.      Interest continues to accrue from and after May 20, 2021 at the rate of 3.990% per year.

8.      The value of the Property as scheduled by the Debtors is $330,000.00.  The current tax-assessed value of the Property is $342,300.00.  Based upon my assessment, the value of the property is no greater than $342,300.00.  A true and correct copy of the Dakota County property tax records for the Property is attached hereto as Exhibit D.

9.      Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, are:

i.      Movant: $121,180.36

10.     As of May 20, 2021 the total arrearage/delinquency is $23,066.60.  Attached hereto as Exhibit E is Local Form 4001-1.

Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


FURTHER YOUR AFFIANT SAITH NOT.



Dated: _May 20th_, 2021.            SPIRE CREDIT UNION

                                    _____
                                    Name: Julius Lee
                                    Title: Sr. Bankruptcy/Legal Specialist.

Subscribed and sworn to before me
this _20TH_ day of _May_, 2021.


Notary Public

_____
Notary Public



**MINNESOTA**
**DEPARTMENT OF**
**COMMERCE**

85 7th Place East, Suite 500
St. Paul, Minnesota 55101-2198
mn.gov/commerce/
651.539.1500   FAX 651.539.1547
An equal opportunity employer

## BULLETIN NO 8483

### CREDIT UNION CHARTER CONVERSION

Deputy Commissioner of Commerce M. Shane Deal announced the issuance of Credit Union Charter No. 782, effective June 1, 2014 to the SPIRE Credit Union, Falcon Heights, Ramsey County. This will complete the conversion from SPIRE Federal Credit Union, a federal charter, to SPIRE Credit Union, a State of Minnesota charter.

The state chartered credit union's address is 2025 Larpenteur Avenue West, Falcon Heights, Minnesota 55113. Deposits will continue to be insured by the National Credit Union Administration.

Dated: May 9, 2014

MIKE ROTHMAN
Commissioner

By: M. Shane Deal
Deputy Commissioner

(SEAL)

STATE OF MINNESOTA
DEPARTMENT OF COMMERCE
I hereby certify that this is a true
and complete copy of the document as
filed for record in this office.

Dated
Commissioner of Commerce
By:

Exhibit A



**SPIRE**
FEDERAL CREDIT UNION

## CLOSED-END DISCLOSURE STATEMENT AND CREDIT AGREEMENT

**Creditor:**
(Referred to below as "You" or "Your")

**SPIRE Federal Credit Union**
**2025 Larpenteur Avenue West**
**Falcon Heights, Minnesota 55113-1339**

**Borrower(s):**
(Referred to below as "I" "me" or "my")

Annette M Kurimay
John A Kurimay

**Address of Borrower(s)**

13939 Falcon Ave
Apple Valley, MN 55124

| LOAN DATE | LOAN NUMBER |
|---|---|
| 05/13/2011 | |

| PAYMENT SCHEDULE | |
|---|---|
| 180 | payments. Due each month on: 20th |

First payment due:   06/20/2011

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate) | FINANCE CHARGE (The dollar amount the credit will cost me if I pay as scheduled) | AMOUNT FINANCED (The amount of credit provided to me or on my behalf) | TOTAL OF PAYMENTS (The amount I will have paid when I have made all of my payments as scheduled) |
|---|---|---|---|
| 3.990% | $ 52,999.01 | $ 160,000.00 | $ 212,999.01 |

### INTEREST RATE AND PAYMENT SUMMARY

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 3.990% |
| Principal + Interest Payment | $ 1,183.33 |
| Estimated Taxes + Insurance (Escrow) ☐ Includes Mortgage Insurance | $ |
| **Total Estimated Monthly Payment** | **$ 1,183.33** |

Please Note: The credit union WILL NOT escrow for property taxes and homeowners insurance.

**LATE CHARGE:** For each payment that is not paid within ten (10) days of its due date, you will be charged 5% of the monthly payment due, subject to applicable law.

**PROPERTY INSURANCE:** If this loan is secured by tangible personal property, as indicated below, property insurance is required. Such insurance is not obtainable from or through you. I may obtain property insurance from any insurance company of my choice that is acceptable to you.

**NO GUARANTEE TO REFINANCE.** There is no guarantee that I will be able to refinance to lower my rate and payments.

**PREPAYMENT:** If I pay off the loan early, I will not have to pay a penalty.

**ASSUMPTION:** Someone buying your home cannot assume the remainder of the mortgage on the original terms.

**SECURITY:** I am giving you a security interest in: My shares, checking, and other deposit accounts with you and:

☒ the property identified in the security description at right.

**SECURITY DESCRIPTION:**

13939 Falcon Ave, Apple Valley, MN 55124

I can refer to the contractual provisions stated on the next page of this Disclosure Statement and Credit Agreement for any additional information concerning nonpayment, default, the right to accelerate the maturity of the obligation and security interests. (e=estimate)

I acknowledge receipt of the Federal Disclosures above and that I have read a completed copy of the provisions set forth on the attached pages of this Disclosure Statement and Credit Agreement, and understand and agree to the terms stated therein.

Borrower's Name Annette M Kurimay        Date   5/13/11

Co-borrower's Name John A Kurimay        Date   5/13/11

Co-borrower's Name        Date

Co-borrower's/Collateral Owner's Name        Date

**OPTIONAL PAYMENT PROTECTION PLAN**
You are not required to buy Debt Protection from us. If we offer Debt Protection, this box ☒ is checked and a separate disclosure/application or declination form is included with your documents.

Exhibit B

## CLOSED-END DISCLOSURE STATEMENT AND CREDIT AGREEMENT

In this Disclosure Statement and Credit Agreement ("Agreement"), the Borrower and any Co-Borrower shall be referred to as "I", "me" or "my", and the Credit Union listed on the first page (or anyone to whom the Credit Union transfers its rights under this Agreement) shall be referred to as "you" or "your". Each person who signs this Agreement is jointly and severally liable for the repayment of credit extended under this Agreement and for the full performance of all other obligations and agreements contained in this Agreement

**Promise to Pay:** I promise to pay to you the Amount Financed plus the Finance Charge according to the **Payment Schedule**, as such provisions are disclosed on the first page of this Agreement, and any other applicable charges described in this Agreement (collectively, my "Loan"). My payment amount includes interest computed and payable at the Annual Percentage Rate shown in the Federal Disclosures on the outstanding balance of the Amount Financed from the date the Finance Charge begins until repayment in full. I also agree to pay your reasonable costs and expenses, including reasonable attorneys' fees, incurred by you in the collection of my debt. The exact amount of my final payment (as well as the total Finance Charge and the Total of Payments) will be somewhat more or less than the amounts disclosed if you do not receive each payment on its scheduled payment date. If my loan is a variable rate loan, the Annual Percentage Rate will vary in accordance with the movements of the index as disclosed in the Federal Disclosures. Therefore, either the amount of my periodic payments or the number of such payments are subject to change, and my final payment, Finance Charge, and Total of Payments will be different than disclosed.

**Late Charge:** If I am late in making a payment, I agree to pay any late charges as provided in the Federal Disclosures. I also agree to pay interest calculated at the Annual Percentage Rate on that portion of the Amount Financed included in a delinquent payment from the due date until the date payment is credited.

**Filing Fees:** If my Loan is secured by tangible personal property, I agree to pay the Filing Fees and Release Fees, if any, described in the Federal Disclosures.

**Receipt of Payments:** Payments must be received at your address specified on the first page of this Agreement (or such other address you subsequently provide to me) on a day you are open for business and during your business hours to be credited to my Loan as of that same day. Payments received at other locations are subject to crediting delays of up to five calendar days.

**Acceleration:** In the event of (a) my failure to make any payment when due; (b) my failure to comply with any other obligation or requirement contained in this Agreement; (c) my death; (d) any statement made by me in connection with this Agreement being false in any material respect; or (e) my insolvency or the filing of any request for relief under the United States Bankruptcy Code by or against me; then, upon your election and upon notice required by applicable law, if any, the entire unpaid balance of my Loan shall become immediately due and payable. You may also exercise any other rights provided to you by law.

**Security Agreement:** As security for payment and performance of all my obligations to you under this Agreement, whether they now exist or arise in the future, including, to the extent permitted by law, any extensions, renewals or refinancings, you shall have (collectively, "Collateral"); (i) In accordance with 12 U.S.C. Section 1757(11), the right to impose a lien on my present and future shares and dividends; and (ii) a security interest in certain other personal property described in the Federal Disclosures. The Collateral shall include any accessions to such property and any proceeds from the sale of the property. If you reasonably determine that the value of the Collateral declines, I agree to provide additional property as Collateral if you so request. If I have given you a security interest in a "Share Pledge" Account I agree that I cannot withdraw any amount from such account if it would reduce the amount in such account below the lessor of (a) the outstanding balance of my Loan, or (b) the amount listed above as the maximum shares pledged. The Collateral also secures my payment of all your reasonable costs and expenses (including attorneys' fees) incurred in the collection of my Loan. The lien and/or security interest given above will not apply to any of my Keogh, Individual Retirement Accounts or other tax deferred accounts. As further security for the payment and performance of my obligations under this Agreement, I grant to you the right of off-set. This means that you can pay amounts owing under this Agreement that are due or past due with amounts to which I am entitled from you, including money in deposit accounts (such as money in share accounts or share draft accounts, including dividends and interest earned). However, you cannot exercise this right of off-set against my Keogh, Individual Retirement Accounts or other tax deferred accounts. You may exercise the right of off-set without notice and without regard to other collateral securing this Loan, the right of off-set also applies no matter who else agreed to pay this Loan. You will not be liable for any dishonor of a check when the dishonor occurs because you off-set this Loan against my deposit account.

**Protection of Collateral:** I agree: (a) to maintain, protect and preserve the Collateral; (b) not to use or permit anyone to use the Collateral in violation of this Agreement or any statute, regulation or ordinance or any policy of insurance covering the Collateral; (c) to pay promptly when due all taxes, charges, encumbrances or liens now or later imposed upon or affecting the Collateral; (d) to notify you promptly of any change of my name or address on file; (e) to help you do all that is necessary to protect your security interest in the Collateral, including giving you all endorsements, assignments, financing statements, or other writings which are necessary to protect your security interest and its priority; (f) not to sell, encumber, lease, rent, otherwise dispose of, or give Collateral to anyone else (other than you); (g) to promptly deliver to you, in the form received, all proceeds of the Collateral I receive; (h) at any reasonable time, upon your demand, to exhibit to you and allow you to inspect the Collateral; (i) unless delivered to you, to keep the Collateral at my residence, as set forth in your records, and not to remove it from that location without your written permission; and (j) to insure any Collateral which is tangible property for its full value against loss or damage with an insurance company acceptable to you and provide you with evidence of such insurance. I may purchase insurance on the Collateral from anyone I choose that is reasonably acceptable to you, and such insurance shall contain a loss payable clause in favor of you. If Collateral is lost or damaged, you can use the insurance proceeds to replace or repair it, or to repay any amounts I owe you. If I do not insure the Collateral and provide you with evidence of such insurance or fail to pay taxes on the Collateral when due, you may, at your option, insure the Collateral or pay such taxes, but you shall have no obligation to do so. I agree to repay the costs incurred by you in connection with your payment of such taxes or procurement of such insurance, at your election, either (i) in full on demand or (ii) in installments with a Finance Charge at the Annual Percentage Rate shown on the Federal Disclosures, which will, at your option, either increase the amount or number of my payments. If any event described in the Acceleration paragraph occurs, you can take possession of the Collateral and sell it to reduce the unpaid balance of my Loan after giving me the proper notice required by law or you can exercise any other rights and remedies given to secured parties under the Uniform Commercial Code or other applicable law. Upon your request, I shall deliver the Collateral at a time and place that you choose. You will not be responsible for any of my other property, not covered by this Agreement, and I leave inside the Collateral. In the event of a sale, your expenses for taking possession of and selling the Collateral will be deducted from the money received from the sale. These costs include the cost of storing the Collateral, preparing it for sale, and attorneys' fees to the extent permitted by law. The balance of the sale money proceeds will be applied to the unpaid balance of my Loan, with any excess refunded to me. To the extent permitted by applicable law, I will pay any amount that remains unpaid after the sale proceeds have been applied to the unpaid balance of my Loan and pay interest on such amount calculated at the Annual Percentage Rate until paid in full.

**Severability:** If any provision of this Agreement shall be held invalid or unenforceable, then this Agreement shall be construed and enforced as if it did not contain such provision.

**Waiver:** Your rights, powers and remedies under this Agreement shall be cumulative and in addition to all rights, powers and remedies provided by law. No failure or delay by you in exercising any such right, power or remedy shall be deemed a waiver thereof; any such waiver must be in writing signed by you.

**Notices:** All notices required to be given to me under this Agreement shall be mailed to the most recent address I have provided you in writing. If more than one person has signed this Agreement, notice to any one of the borrowers shall constitute notice to all of the borrowers, subject to applicable law.

**Governing Law:** This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Minnesota.

together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ 1-4 Family Rider

☐ Graduated Payment Rider   ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider

☐ Balloon Rider   ☐ Rate Improvement Rider   ☐ Second Home Rider

☐ Other(s) [specify]   ☐ Home Equity Line of Credit Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   _____   (Seal)
Annette M Kurimay              John A Kurimay                     -Borrower

_____   _____   (Seal)
                                                                            -Borrower

_____   _____   (Seal)
                                                                            -Borrower

——————————— [Space Below This Line For Acknowledgement] ———————————

**STATE OF**   Minnesota

**COUNTY OF**   Dakota   } **ss:**

I, ___Amy Wegner___, a Notary Public in and for said county and state, do hereby certify that
Annette M Kurimay and John A Kurimay, Wife and Husband
, personally
appeared before me and is (are) known or proved to me to be the person(s) who, being informed of the contents of the foregoing instrument, have executed same, and acknowledged said instrument to be   **Their**   free and voluntary act and deed that   **They**   executed said instrument for the purposes and uses therein set forth.

Witness my hand and official seal this   **13**   day of   **May** , **2011**

My Commission Expires: 1-31-15

County of Notary Public: Ramsey

_____
                                                Notary Public                    (SEAL)

This instrument was prepared by

**Spire Federal Credit Union**
**2025 Larpenteur Ave W**
**Falcon Heights, MN 55113**

AMY R WEGNER
Notary Public
Minnesota
My Commission Expires January 31, 2015

**Receipt#:** ▮▮▮▮▮

| ABSTRACT FEE | $46.00 |
| MRT FEE | $368.00 |
| CONSERVATION | $5.00 |

Recorded on: 6/2/2011  11:53:42AM
By: TMB, Deputy

Return to:
CU TITLE SERVICES
500 MAIN ST #120
NEW BRIGHTON, MN  55112

Joel T. Beckman County Recorder
Dakota County, MN

---

**(Space Above This Line For Recording Data)**

# MORTGAGE

Account Number: ▮▮▮▮▮▮▮▮

THIS MORTGAGE ('Security Instrument') is given on **05/13/2011** . The mortgagor is
**Annette M Kurimay and John A Kurimay, Wife and Husband**

('Borrower').  This Security Instrument is given to **Spire Federal Credit Union**, a corporation
which is organized and existing under the laws of The United States of America, and whose address
is 2025 Larpenteur Avenue West, Falcon Heights, MN 55113 ('Lender').  Borrower owes Lender the principal sum
of  **One Hundred Sixty Thousand  Dollars And 00/100**            (U.S. $   **160,000.00**           ).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ('Note'),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **05/20/2026** and for
interest at the yearly rate of  **3.990%**        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with
interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For
this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following
described property located in            **Dakota**          **County,**                **Minnesota**              :
**Lot 37, Block 1, Waterford Village Townhomes Second, Dakota County, Common
Interest Community Number 152.
Abstract Property**
which has the address of        **13939 Falcon Ave, Apple Valley, MN 55124**
                                 ('Property Address');

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall
also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument
as the 'Property'.
BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the property is unemcumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against all
claims and demands, subject to any encumbrances of record.

RECEIVED

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*(page 1 of 7 pages)*

JUN 0 2 2011

DAKOTA COUI
TAXATION & RECORDS

Exhibit C

THE SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS: Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ('Funds') for: (a) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property; (b) yearly leasehold payments or grounds rent on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called 'Escrow Items.' Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. 2601 *et seq*. ('RESPA'), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principle due; and last, to any late charges due under the Note.

**4. Charge; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage', and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, the Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument of Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidence by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in the Security Instrument, or there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amount disbursed by Lender under paragraph 7 shall become additional debt of Borrower by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agents may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principle, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided in this Security Instrument shall be given by delivering it or by mailing it first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, as its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to,

reasonable attorneys' fees; and (d) take such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the Loan Servicer) that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The proceeding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in paragraph 20, 'Hazardous Substances' are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde and radioactive materials. As used in this paragraph 20, 'Environmental Law' means federal laws and laws of jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**24. Interest on Advances.** The interest rate on advances made by Lender under paragraph 7 shall not exceed the maximum rate allowed by applicable law.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded

*(page 6 of 7 pages)*

together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ 1-4 Family Rider

☐ Graduated Payment Rider        ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider

☐ Balloon Rider                  ☐ Rate Improvement Rider      ☐ Second Home Rider

☐ Other(s) [specify]             ☐ Home Equity Line of Credit Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____        (Seal)
Annette M Kurimay                       John A Kurimay                          -Borrower

_____        _____        (Seal)
                                                                               -Borrower

_____        _____        (Seal)
                                                                               -Borrower

──────────────── [Space Below This Line For Acknowledgement] ────────────────

**STATE OF**   Minnesota

**COUNTY OF**   Dakota          } **SS:**

I,  Amy Wegner            , a Notary Public in and for said county and state, do hereby certify that
Annette M Kurimay and John A Kurimay, Wife and Husband

, personally appeared before me and is (are) known or proved to me to be the person(s) who, being informed of the contents of the foregoing instrument, have executed same, and acknowledged said instrument to be       Their       free and voluntary act and deed that   They   executed said instrument for the purposes and uses therein set forth.

Witness my hand and official seal this    13    day of   May  , 2011

My Commission Expires:  1-31-15

County of Notary Public:  Ramsey

                                                   _____
                                                   Notary Public          (SEAL)

This instrument was prepared by

**Spire Federal Credit Union**
**2025 Larpenteur Ave W**
**Falcon Heights, MN 55113**

AMY R WEGNER
Notary Public
Minnesota
My Commission Expires January 31, 2015



**Dakota County Treasurer-Auditor**
1590 Highway 55
Hastings MN 55033
651-438-4576 Fax 651-438-4399
www.dakotacounty.us

**Taxpayer copy**

Save this copy for future reference.

**2021 Property Tax Statement**

**PROPERTY ID:** 01-83276-01-370

Tax Description: WATERFORD VILLAGE TOWNHOMES 2ND

37 1

CIC #152 LOT 37 BLK 1 & INT

**TAXPAYER:** JOHN A & ANNETTE M KURIMAY
13939 FALCON AVE
APPLE VALLEY MN 55124-3310

| | Payable 2020 | Payable 2021 |
|---|---|---|
| Estimated Market Value: | 325,800 | 342,300 |
| Homestead Exclusion: | 7,918 | 6,433 |
| Taxable Market Value: | 317,882 | 335,867 |
| New Imp/Expired Excl: | 0 | 0 |
| Property Class: | RESD HSTD | RESD HSTD |

| | | | |
|---|---|---|---|
| 1 | Use this amount on Form M1PR to see if you're eligible for a property tax refund   File by August 15 **If this box is checked, you owe delinquent taxes and are not eligible** | X | $4,022.00 |
| 2. | Use this amount for the special property tax refund on schedule 1 on Form M1PR. | $3,932.00 | |

**Property Tax and Credits**

| | | Payable 2020 | Payable 2021 |
|---|---|---|---|
| 3. | Property taxes before credits | $3,932.66 | $4,022.00 |
| 4 | Credits that reduce property taxes | | |
| | A. Agricultural and Rural Credits | $0.00 | $0.00 |
| | B. Other Credits | $0.00 | $0.00 |
| 5. | Property taxes after credits | $3,932.66 | $4,022.00 |

**Property Tax by Jurisdiction**

| | | | Payable 2020 | Payable 2021 |
|---|---|---|---|---|
| 6. | County: | A. Dakota County Levy | $766.96 | $762.78 |
| | | B. Regional Transit Rail | $0.00 | $0.00 |
| 7. | City or Town: | APPLE VALLEY | $1,232.88 | $1,282.88 |
| 8 | State General Tax | | $0.00 | $0.00 |
| 9. | School District: 196 | A. Voter Approved Levies | $1,118.78 | $1,121.86 |
| | | B. Other Local Levies | $632.26 | $671.22 |
| 10. | Special Taxing Districts | A. Metropolitan Special Taxing Districts | $68.76 | $69.10 |
| | | B. Other Special Taxing Districts | $59 38 | $58 64 |
| | | C. Tax Increment | $0.00 | $0.00 |
| | | D. Fiscal Disparity | $0.00 | $0.00 |
| 11. | Non-school voter approved referenda levies | | $53.64 | $55.52 |
| 12 | Total property tax before special assessments | | $3,932 66 | $4,022 00 |
| | | | (Total) | |
| 13. | Special Assessments | | $319.34 | |

| | | |
|---|---|---|
| Principal | | $0 00 |
| Interest: | | $0.00 |

| | | | |
|---|---|---|---|
| **14.** | **Your Total Property Tax and Special Assessments** | **$4,252.00** | **$4,022.00** |

Do not use this statement for tax payments.  Use link below.

View tax payment stub and payment information.

View tax statement in PDF.

| | |
|---|---|
| First half tax: | $2,011.00 |
| Second half tax: | $2,011.00 |

Exhibit D

LOCAL FORM 4001-1
REVISED 3/2020

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

Case No. 19-30669

In re: John Andrew Kurimay and Annette Marie Kurimay

Debtors.

## LOAN HISTORY

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date payment due | Date payment received | Date to which payment applied (mo/yr) | Amount rec'd from Debtor(s) | Monthly amount due: Principal + Interest | Monthly amount due: Escrow | Amount due: Late fees | Amount due: Other charge* | CHARGES — Description of charge |
|---|---|---|---|---|---|---|---|---|
| 3/20/2019 | 3/7/2019 | 3/20/2019 | $1,165.35 | | | | | Prepetition partial payment to 3/20/2021 |
| 4/20/2019 | | | | $1,183.33 | | | | |
| 5/20/2019 | 5/9/2019 | 3/20/2019 & 4/20/2019 | $1,200.00 | $1,183.33 | | | | Partial $34.68 applied to 4/20/2019 |
| 6/20/2019 | 5/31/2019 | 4/20/2019 & 5/20/2019 | $1,200.00 | $1,183.33 | | | | Partial $51.35 applied to 5/20/2019 |
| 7/20/2019 | 7/1/2019 | 5/20/2019 & 6/20/2019 | $1,200.00 | $1,183.33 | | | | Partial $68.02 applied to 6/20/2019 |
| 8/20/2019 | 7/31/2019 | 6/20/2019 & 7/20/2019 | $1,200.00 | $1,183.33 | | | | Partial $84.69 applied to 7/20/2019 |
| 9/20/2019 | 9/4/2019 | 7/20/2019 & 8/20/2019 | $1,200.00 | $1,183.33 | | | | Partial $101.36 applied to 8/20/2019 |
| 10/20/2019 | 10/7/2019 | 8/20/2019 | $500.00 | $1,183.33 | | | | Partial $500.00 applied to 8/20/2019 |
| | 10/24/2019 | 8/20/2019 & 9/20/2019 | $617.96 | | | | | Partial $35.99 applied to 9/20/2019 |
| | 10/31/2019 | 10/20/2019 | $600.00 | | | | | Partial $600.00 applied to 10/20/2019 |
| 11/20/2019 | | | | $1,183.33 | | | | |
| 12/20/2019 | | | | $1,183.33 | | | | |
| 01/20/2020 | | | | $1,183.33 | | | | |
| 02/20/2020 | | | | $1,183.33 | | | | |
| 03/20/2020 | | | | $1,183.33 | | | | |
| 04/20/2020 | | | | $1,183.33 | | | | |
| 05/20/2020 | | | | $1,183.33 | | | | |

**Exhibit E**

| | (a) | (b) | (c) | (d) | (e) |
|---|---|---|---|---|---|
| 06/20/2020 | | $1,183.33 | | | |
| 07/20/2020 | | $1,183.33 | | | |
| 08/20/2020 | | $1,183.33 | | | |
| 09/20/2020 | | $1,183.33 | | | |
| 10/20/2020 | | $1,183.33 | | | |
| 11/20/2020 | | $1,183.33 | | | |
| 12/20/2020 | | $1,183.33 | | | |
| 01/20/2021 | | $1,183.33 | | | |
| 02/20/2021 | | $1,183.33 | | | |
| 03/20/2021 | | $1,183.33 | | | |
| 04/20/2021 | | $1,183.33 | | | |
| 05/20/2021 | | $1,183.33 | | | |
| TOTALS: | $8,883.31 | $31,949.91 | | | |

* Any "Other charge" must be described, itemized by amount and allowed under and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

| | |
|---|---|
| Default amount claimed in the motion. | |
| Note: Total amount due (columns (b) + (c) + (d) + (e)) less amount received from debtor (column (a)) must equal the default amount claimed in the motion. | $23,066.60 |
| Attorneys' fees and filing fee for the motion, if allowed under note and/or mortgage and sought by movant to resolve motion. | $938.00 |
| Escrow balance (amounts held for payment of taxes, insurance, etc.) | $0.00 |
| Suspense account balance (amount of un-applied payments). *Partial applied to September 20, 2019 | $583.33 |

A completed example of this form is found at *Link*.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Chapter 13 Case

John Andrew Kurimay and Annette Marie Kurimay,          Case No. 19-30669-KAC

Debtors.

## MEMORANDUM IN SUPPORT OF MOTION
## FOR RELIEF FROM AUTOMATIC STAY

Spire Credit Union (**Movant**) submits this memorandum of law in support of its motion

for relief from the stays in the above-entitled matter.

### FACTS

Movant holds a valid, duly perfected mortgage on Property owned by Debtors.

Debtors Confirmed Chapter 13 Plan (**Plan**) requires Debtors to make post-petition

mortgage payments directly to Movant, when due.  Debtors are delinquent in respect to post-petition

mortgage payments for the months of October, 2019 through May, 2021 for a total past due amount

$23,066.60.

Annette M. Kurimay and John A. Kurimay are the mortgagors on the Mortgage.

The value of the Property as scheduled by the Debtors is $330,000.00.  The current tax-

assessed value of the Property is $342,300.00 .  The total mortgage debt of Movant's Mortgage is

$121,180.36.

### ARGUMENT

11 U.S.C. § 362(d) provides that on request of a party in interest and after notice and a

hearing, the court shall grant relief from the stay provided under 11 U.S.C. § 362(a) of this Section

for cause, including lack of adequate protection of interest in property of such party in interest.

Failure of a Chapter 13 debtor to make post-confirmation payments to a mortgage is sufficient cause for relief from the automatic stay. *In re Borm*, 508 B.R. 104, 106 (8th Cir. B.A.P. 2014); *see Reinbold v. Dewey County Bank*, 942 F.2d 1304 (8th Cir. 1991); *see also First Federal Sav. & Loan Assoc. v. Whitebread*, 18 B.R. 192 (Bankr. D. Minn. 1982).

The Debtors have failed to make regular mortgage payments under the mortgage and confirmed Chapter 13 Plan. They have not made a payment to Movant since October 31, 2019 and are in post-petition mortgage arrears totaling $23,066.60. As such, Movant is receiving far less than it has bargained for with the Debtors. As stated by the Eight Circuit Bankruptcy Appellate Panel,

> The statutory grounds [under 11 U.S.C. §§ 362(d)(1) and (2)] for granting relief from the automatic stay are in the disjunctive. The bankruptcy court must, therefore, grant relief if the movant either proves cause, or proves that there is no equity in the property and that it is not necessary for a successful reorganization. Cause has been defined to mean "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding."

*In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005)(citations omitted). Section 362(d)(1) permits relief from the stay for "cause".

> "Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis… "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.

*In re Texas State Optical*, Inc., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)(citations omitted). The standard for "cause" is much broader than one enumerated ground of lack of adequate protection as defined by 11 U.S.C. § 361. *In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn., 1985).

Cause certainly encompasses the fact situation before the Court. The Debtors' confirmed plan provides for payment to few other creditors other than payment of the Debtors' pre-petition mortgage debt; the same mortgage debt they have failed to make for nearly twenty months.

Accordingly, Movant is entitled to an order terminating the stays of 11 U.S.C. §362(a) and authorizing it to foreclose its mortgage on the Property.

Dated: May 21, 2021

**SCHINDELSEGAL, PLLC**

By: ___/s/ Daniel M. Duffek_____
Daniel M. Duffek, #388297
5901 Cedar Lake Road
Minneapolis, MN  55416
Telephone: (612) 253-6970
dduffek@schindelsegal.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

                                       Chapter 13 Case

John Andrew Kurimay and Annette Marie Kurimay,      Case No. 19-30669-KAC

         Debtors.

## DECLARATION OF PROOF OF SERVICE

       I, Daniel M. Duffek, an attorney with the law firm of SchindelSegal, PLLC, licensed to practice law in this Court, with office address of 5901 Cedar Lake Road, Minneapolis, MN 55416, declares that on May 21, 2021, I served the annexed Notice of Hearing and Motion For Relief From Stay, Affidavit, Memorandum of Law in Support of Motion and proposed Order by automatic e-mail notification pursuant to the Electronic Case Filing System and this notice constitutes service or notice pursuant to Local Rule 9006-1(a) AND if Non-Efile Users by mailing to each of the parties listed below a copy of each thereof, enclosed in an envelope, first class postage prepaid, and by depositing same in the post office at Minneapolis, Minnesota, directed to them at their last known addresses listed below:

John Andrew Kuriamy          Annette Marie Kurimay
13939 Falcon Avenue           13939 Falcon Avenue
Apple Valley, MN 55124       Apple Valley, MN 55124

And I declare under penalty of perjury, that the foregoing Unsworn Declaration for Proof of Service is true and correct.

Dated: <u>May 21, 2021</u>           Signed: <u>/s/ Daniel M. Duffek</u>

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

                                                   Chapter 13 Case

John Andrew Kurimay and Annette Marie Kurimay,       Case No. 19-30669-KAC

            Debtors.

## ORDER GRANTING RELIEF FROM STAY

This case is before the court on the motion of Spire Credit Union for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED**:

1.       The motion for relief from stay is granted as follows.

2.       The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

Lot 37, Block 1, Waterford Village Townhomes Second, Dakota County, Common Interest Community Number 152; commonly known as 13939 Falcon Ave, Apple Valley, MN 55124.

Dated: _____

                                               _____
                                               Kathleen A. Constantine
                                               United States Bankruptcy Judge